**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **SYMBOLOGY INNOVATIONS, LLC,** | |
| **Plaintiff,** | **CASE NO. 2:23-CV-00473-JRG** |
| **v.** | **JURY TRIAL DEMANDED** |
| **DEXCOM, INC.,** | |
| **Defendant.** | |

**DEXCOM, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(C)**

**TABLE OF CONTENTS**

I.    SUMMARY OF THE ARGUMENT .................................................................................. 1

II.   NATURE AND STATE OF THE PROCEEDINGS ........................................................ 2

III.  STATEMENT OF THE ISSUE ....................................................................................... 2

IV.   STATEMENT OF THE FACTS ...................................................................................... 2

V.    LEGAL STANDARD ...................................................................................................... 4

        A. Legal Standard for Dismissal Pursuant to Rule 12(c). ....................................... 4

        1. This Case Should Be Disposed of at the Pleading Stage Through Rule 12(c). ........... 4

        2. The Law of 35 U.S.C. § 101 ....................................................................................... 5

VI.   ARGUMENT ................................................................................................................... 6

        A. The Asserted Patents Are Invalid Under § 101 ................................................... 7

        1. Claim 1 of the '752 Patent is representative. ............................................................. 7

        2. *Alice* Step 1: Claim 1 of the '752 Patent is directed to the abstract idea of data
           recognition and retrieval. ........................................................................................... 9

        3. *Alice* Step 2: The claims of the Asserted Patents contains no inventive concept
           sufficient to transform the abstract idea into patent-eligible matter. ........................ 14

        B. There Are No Claim Construction or Factual Disputes Preventing the Court From
           Ruling on This Issue at the Rule 12 Stage. ......................................................... 17

VII.  CONCLUSION .............................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
    882 F.3d 1121 (Fed. Cir. 2018).....................................................................................1

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014)............................................................................... *passim*

*Ancora Technologies, Inc. v. HTC America, Inc.*,
    908 F.3d 1343 (Fed. Cir. 2018)...................................................................................13

*Appistry, Inc. v. Amazon.com, Inc.*,
    195 F. Supp. 3d 1176 (W.D. Wash., 2016) *aff'd sub nom. Appistry, LLC v. Amazon.com, Inc.*,
    676 F. App'x 1008 (Fed. Cir. 2017) .......................................................................18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................................4

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*,
    687 F.3d 1266 (Fed. Cir. 2012)...............................................................................5, 16

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018)...................................................................................17

*Bilski v. Kappos*,
    561 U.S. 593 (2010)...............................................................................................5, 6, 9

*buySAFE, Inc. v. Google, Inc.*,
    765 F.3d 1350 (Fed. Cir. 2014)...................................................................................16

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
    927 F.3d 1306 (Fed. Cir. 2019).....................................................................................1

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014).................................................................8, 10, 11, 16

*Cuvillier v. Sullivan*,
    503 F.3d 397 (5th Cir. 2007) ...................................................................................4, 5

*Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*,
    558 F. App'x 988 (Fed. Cir. 2014) .............................................................................13

*CyberSource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011)....................................................................................6

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) ..................................................................................15

*Diamond v. Chakrabarty*,
    447 U.S. 303 (1980) ....................................................................................................5

*Diamond v. Diehr*,
    450 U.S. 175 (1981) ....................................................................................................6

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
    815 F. App'x 529 (Fed. Cir. 2020) ...........................................................................18

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) ................................................................................15

*First-Class Monitoring, LLC v. Ups of Am., Inc.*,
    389 F. Supp. 3d 456 (E.D. Tex. 2019) ......................................................................17

*Fort Props., Inc. v. Am. Master Lease LLC*,
    671 F.3d 1317 (Fed. Cir. 2012) ..................................................................................6

*Hacienda Recs., L.P. v. Ramos*,
    718 F. App'x 223 (5th Cir. 2018) ..............................................................................4

*Intellectual Ventures I LL v. Capital One Bank U.S.A.*,
    792 F.3d 1363 (Fed. Cir. 2015) ................................................................................16

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015) ................................................................................14

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S. Ct. 1289 (2012) ................................................................................................6

*Parker v. Flook*,
    437 U.S. 584 (1978) ....................................................................................................6

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*,
    2:16-cv-152-JRG-RSP, 2017 WL 1065938 (E.D. Tex. Mar. 8, 2017) ......................9

*PPS Data, LLC v. Jack Henry & Assocs., Inc.*,
    No. 2:18-cv-00007-JRG, 2019 WL 1317286 (E.D. Tex. Mar. 21, 2019) ..................8

*Recognicorp, LLC v. Nintendo Co., Ltd.*,
    855 F.3d 1322 (Fed. Cir. 2017) .................................................................11, 12, 16

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018) ..................................................................................9

*Secured Mail Solutions LLC v. Universal Wilde, Inc.*,
  873 F.3d 905 (Fed. Cir. 2017)......................................................................1, 12, 14, 15

*Simio, LLC v. FlexSim Software Products, Inc.*,
  983 F.3d 1353 (Fed. Cir. 2020)......................................................................................18

*In re TLI Commc'ns LLC Patent Litig.*,
  823 F.3d 607 (Fed. Cir. 2016)........................................................................................15

*Ultramercial, Inc. v. Hulu, LLC*,
  772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring)...........................................5, 10, 13, 14

**Statutes**

35 U.S.C. § 101......................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6).................................................................................................1, 4, 18

Fed. R. Civ. P. 12(c) ..................................................................................................1, 2, 4, 7

## I.      SUMMARY OF THE ARGUMENT

DexCom, Inc. ("DexCom") requests that the Court dismiss this case because U.S. Patent Nos. 7,992,773 (the "'773 Patent"), 8,424,752 (the "'752 Patent"), 8,651,369 (the "'369 Patent"), and 8,936,190 (the "'190 Patent") (the "Asserted Patents") do not embrace patent-eligible subject matter. The claims of the Asserted Patents are directed to the abstract idea of data recognition and retrieval, and none of the claims recites any specific non-conventional hardware or software. In *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 912 (Fed. Cir. 2017), the Federal Circuit held claims directed to decoding a QR code—like the claims at issue in this case—invalid under *Alice*, and affirmed the district court's grant of a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The claims of the Asserted Patents cannot be meaningfully distinguished from the *Secured Mail* claims and are thus invalid for the same reasons.

In its Complaint, Symbology included allegations of novelty and non-obviousness. (*See, e.g.*, Dkt. No 1 ("Compl."), ¶¶ 13, 16, 19.) These allegations consist of legal conclusions and characterizations of the claimed invention that are contradicted by the patent's specification. While pleadings may properly be considered for a Rule 12 motion to dismiss (subject to the *Twombly/Iqbal* pleading standards), the pleadings cannot be used to alter or rewrite the terms of a patent or to confer eligibility on otherwise ineligible subject matter. *Cf. Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018); *see also Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019). They are thus irrelevant to the § 101 analysis.

Resolving this issue does not require discovery or formal claim construction. To avoid waste of judicial and party resources unnecessarily litigating an invalid patent, DexCom thus requests that the Court dismiss the Complaint pursuant to Rule 12(c).

## II.      NATURE AND STATE OF THE PROCEEDINGS

On October 5, 2023, Plaintiff Symbology filed its Complaint for patent infringement, accusing DexCom of infringing the Asserted Patents. Symbology accuses DexCom of infringing at least Claim 1 of the '752 Patent, Claim 1 of the '369 Patent, and Claim 1 of the '190 Patent by DexCom's alleged use of a Quick Response Code. (*See* Compl., ¶ 40.)[1]

## III.     STATEMENT OF THE ISSUE

Abstract ideas are ineligible for patentability under 35 U.S.C. § 101, absent an inventive concept that amounts to significantly more than the abstract idea. The claims of the Asserted Patents are directed to the abstract idea of data recognition and retrieval. The Asserted Patents do not include an inventive concept beyond that idea. Should the Court therefore dismiss Symbology's claims pursuant to Rule 12(c)?

## IV.     STATEMENT OF THE FACTS

The Asserted Patents are directed to "enabling a portable electronic device to retrieve information about an object when the object's symbology, e.g., a barcode, is detected." '752 Patent and '369 Patent, at Abstract. Claim 1 of the '752 Patent, set forth below, is representative of the claims of the Asserted Patents:

> 1. A method comprising:
>
> capturing a digital image using a digital image capturing device that is part of a portable electronic device;
>
> detecting symbology associated with an object within the digital image using a portable electronic device;

---

[1] Symbology's Complaint explicitly includes infringement counts for the '752 Patent, '369 Patent, and '190 Patent. (*See* Compl., ¶¶ 44, 61, 78.) However, the Complaint also states that "Plaintiff alleges infringement on the part of Defendant of the '773 Patent" and includes the patent as an exhibit. (Compl., ¶ 14, Ex. A.) As such, DexCom's Motion also addresses the ineligibility of the '773 Patent.

decoding the symbology to obtain a decode string using one or more visual detection applications residing on the portable electronic device;

sending the decode string to a remote server for processing;

receiving information about the object from the remote server wherein the information is based on the decode string of the object;

displaying the information on a display device associated with the portable electronic device.

'752 Pat., Cl. 1.

Under Symbology's characterization of the Asserted Patents, this claim can be broken down into six main steps: (1) capturing an image with a camera or a scanner on a "portable electronic device" (*e.g.*, taking a photograph or scanning an image with a smartphone); (2) detecting a symbology (*e.g.*, recognizing a barcode in the captured image); (3) decoding the symbology to obtain a "decode string" (*e.g.*, reading information from the barcode); (4) sending the "decode string" to a "server" for processing (*e.g.*, requesting a webpage based on the information obtained from the barcode); (5) receiving information from the "server" in response (*e.g.*, receiving the contents of the webpage ); and (6) displaying the information received on the portable electronic device (*e.g.*, displaying a webpage). Put simply, these steps are directed to recognizing and retrieving information associated with a pattern.

The applicant made clear through his own language in the specification that the components and processes for carrying out the claimed method were conventional. For example, the claimed "portable electronic device" can be virtually any mobile device capable of taking a photograph or scanning an image. *See* '752 Patent, 1:58–61 ("Examples of the portable electronic devices that contain both applications and imaging systems include Apple Computer's IPhone, Google's Droid, and various mobile devices from Motorola"); *id.*, 2:57–61 ("Using any applicable

visual detection device (e.g., a camera, scanner, or other device) on the portable electronic device, the user may select an object by scanning or capturing an image of symbology (e.g., barcodes) associated with the object."). The applicant further acknowledged that various programs and applications operable on a portable electronic device to scan and decode a barcode were available in the prior art. *Id.*, 3:29–33 ("Examples of applications that allow scanning include Neomedia's Neo Reader, Microsoft's Smart Tags, Android's Shop Savvy, Red Laser, ScanBuy, etc."). According to the '752 Patent, once a barcode is decoded (using any of these existing applications), the "decode string" (*i.e.*, the information obtained from the barcode) is then "sent" to a "remote server" to retrieve information (*e.g.*, webpage content) that is then displayed on the portable electronic device. *Id.*, 3:21–28.

## V.     LEGAL STANDARD

### A.  Legal Standard for Dismissal Pursuant to Rule 12(c).

#### 1.    This Case Should Be Disposed of at the Pleading Stage Through Rule 12(c).

In the Fifth Circuit, Rule 12(c) motion standards are the same as Rule 12(b)(6) motion standards. *Hacienda Recs., L.P. v. Ramos*, 718 F. App'x 223, 227 (5th Cir. 2018) (citing *Guidry v. Am. Pub. Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007)). Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007). Although factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions").

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier*, 503 F.3d at 401 (internal citations and quotations omitted).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring). In those situations, claim construction is not required to conduct a § 101 analysis. *Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

### 2.  The Law of 35 U.S.C. § 101.

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. Also, the law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980). Abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611–12. In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible

concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted).

Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id.* at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). Indeed, if a claim could be performed in the human mind, or by a human using pen and paper, it is not patent-eligible. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). Also, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity—such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 132 S. Ct. at 1297–98, 1300–01; *Bilski*, 561 U.S. at 610; *Diamond v. Diehr*, 450 U.S. 175, 191–92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978). Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300; *see also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("Such a broad and general limitation does not impose meaningful limits on the claim's scope.").

## VI.    ARGUMENT

Symbology's Complaint should be dismissed. The claims of the Asserted Patents are invalid under 35 U.S.C. § 101 because they fail both steps of the *Alice* test. Each of the claims is directed to the abstract idea of data recognition and retrieval. Abstract ideas are not eligible for patenting. None of the claims contains an "'inventive concept' . . . sufficient to ensure that the

patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *See Alice*, 134 S. Ct. at 2355 (emphasis added). Thus, DexCom respectfully requests that the Court render judgment on the pleadings against Symbology and dismiss this case with prejudice. Fed. R. Civ. P. 12(c).

### A.    The Asserted Patents Are Invalid Under § 101.

#### 1.    Claim 1 of the '752 Patent is representative.

Claim 1 of the '752 Patent is representative of the other claims of the Asserted Patents because the claims contain the same essential elements. Specifically, all the independent claims, Claims 1, 12, and 15 of the '773 Patent, 1, 17, and 24 of the '752 Patent, 1, 17, and 24 of the '369 Patent, and 1, 17, and 20 of the '190 Patent include: (1) capturing an image with a camera or a scanner; (2) detecting a symbology; (3) decoding the symbology to obtain a "decode string"; (4) sending the "decode string" to a "server" for processing; (5) receiving information from the "server" in response; and (6) displaying the information received. In addition, Claim 12 of the '773 Patent, Claim 17 of the '752 Patent, Claim 17 of the '369 Patent, and Claim 17 of the '190 Patent relate to "[a] computer application stored on a computer-readable medium and executable by a processing device incorporated in a portable electronic device" performing the same functions, and Claim 15 of the '773 Patent, Claim 24 of the '752 Patent, Claim 24 of the '369 Patent, and Claim 20 of the '190 Patent relate to a "symbology management application" performing the same functions.

Some of the dependent claims recite limitations for: (1) running visual detection applications in the background (Cl. 4); (2) configuring visual detection applications to automatically detect barcodes (Cl. 5); and (3) analyzing the decode string and selecting appropriate application to decode (Cl. 9). These claims also suffer from the same results-oriented (and thus ineligible) claim language as Claim 1 of the '752.

Other dependent claims recite insignificant pre- or post-solution activity, such as allowing a user to select certain preferences or store data:

| Pre- or Post-Solution Activity | Claims |
|---|---|
| enabling users to select certain preferences | 2, 3, 18 |
| detecting barcodes and symbology based on user request | 7 |
| sending instructions to visual detection applications and remote servers | 8 |
| enabling the user to store information | 11 |
| providing e-commerce options to the user | 12 |
| decoding barcodes and symbology using visual search technology | 15, 23 |

The remaining claims recite activity like alerting the user and asking to decode a barcode, analyzing a decode string and selecting the appropriate application to decode, allowing the user to select an application to decode the barcode, and displaying information and images. *See, e.g.*, '752 Pat. and '369 Pat., Cls. 6, 10, 13, 14, 16, 19, 20, 21, and 22. None of the dependent claims recite more than insignificant pre- or post-solution activity and this does not change the analysis under § 101. *See, e.g.*, '773 Patent, Cls. 2–11, 13–14, 16–18; '752 Patent, Cls. 2–16, 18–23, 25–28; '369 Patent, Cls. 2–16, 18–23, 25–28; '190 Patent, Cls. 2–16, 18–19.

Similar to the claim limitations in the representative Claim 1 of the '752 Patent, the additional claim limitations consist of generic components used for their conventional purpose, and thus, they do not alter the § 101 analysis. Claim 1 is thus representative for the § 101 analysis. *See PPS Data, LLC v. Jack Henry & Assocs., Inc.*, No. 2:18-cv-00007-JRG, 2019 WL 1317286, at *5 (E.D. Tex. Mar. 21, 2019) (articulating that defendants first bear the burden of demonstrating a claim is representative, which then shifts to the plaintiff to identify a difference material to the § 101 analysis); *see also Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l*

*Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014); *Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*, 2:16-cv-152-JRG-RSP, 2017 WL 1065938, at *8–9 (E.D. Tex. Mar. 8, 2017).

### 2. *Alice* Step 1: Claim 1 of the '752 Patent is directed to the abstract idea of data recognition and retrieval.

In determining patent eligibility under § 101, the Court must first determine whether the claims are directed to an abstract idea. *Alice*, 134 S. Ct. at 2355. Under any plausible reading, the claims of the Asserted Patents are directed to an unpatentable, abstract idea because they claim nothing more than the "longstanding," "routine," and "conventional" concept of data recognition and retrieval. *See Alice*, 134 S. Ct. at 2356–59; *Bilski*, 561 U.S. at 611.

In assessing whether Claim 1 is directed to an abstract idea, the Court begins by analyzing the "focus" of the claim, *i.e.*, its "character as a whole," in order to determine whether the claim is directed to an abstract idea. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). All Claim 1 of the '752 Patent covers is a way to use a barcode to obtain information in order to access a webpage, consisting of nothing more than a set of basic ideas like capturing, detecting, decoding, sending, receiving, and displaying data:

| Claim Language | Claimed Idea |
|---|---|
| A method comprising: | |
| capturing a digital image using a digital image capturing device that is part of a portable electronic device; | capturing data |
| detecting symbology associated with an object within the digital image using a portable electronic device; | detecting data |
| decoding the symbology to obtain a decode string using one or more visual detection applications residing on the portable electronic device; | decoding data |
| sending the decode string to a remote server for processing; | sending data |
| receiving information about the object from the remote server wherein the information is based on the decode string of the object; | receiving data |

| displaying the information on a display device associated with the portable electronic device. | displaying data |
|---|---|

At a high level, this claim describes the most generic functional steps of a standard computer (*i.e.*, capturing, detecting, decoding, sending, receiving, and displaying data). Such a broad concept is not patent eligible because it "recite[s] an abstraction—an idea, having no particular concrete or tangible form." *Ultramercial*, 772 F.3d at 715. That the claim purports to implement the steps with conventional components like a "portable electronic device," a "remote server," a "display device," and generic "visual detection applications" does not make it any less abstract.

The specification admits that barcode scanning and decoding programs were prevalent at the time of the invention. '752 Pat., 3:29–36. Indeed, the claims implement this prior-art technology to carry out the steps of capturing, detecting, decoding, and retrieving information from a server. Claim 1 of the '752 Patent does no more than use existing technology to recognize an image, decode the image, then do something based upon the decoded information. It is thus directed to the abstract idea of data recognition and retrieval.

Courts have found similar patent claims to be ineligible. In *Content Extraction*, the claims generally recited "a method of 1) extracting data from hard copy documents using an automated digitizing unit such as a scanner, 2) recognizing specific information from the extracted data, and 3) storing that information in a memory." *Content Extraction*, 776 F.3d at 1345. The claimed method "could be performed by software on an automated teller machine (ATM) that recognizes information written on a scanned check, such as the check's amount, and populates certain data fields with that information in a computer's memory." *Id.* The Federal Circuit concluded in *Alice*'s first step that the claims were "drawn to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory"; or, put

simply: "data recognition and storage." *Id.* at 1347. In rejecting the plaintiff's argument that the claims were not abstract because they required the use of a scanner, the Federal Circuit likened the claims to those found abstract in *Alice*, which "also required a computer that processed streams of bits." *Id.* Like the *Content Extraction* claims, Claim 1 of the '752 Patent is abstract because it simply decodes an image to obtain information and then retrieves data from a server based on that information. The claims in *Content Extraction* were directed to data recognition and storage, whereas the '752 Patent is directed to data recognition and retrieval—the former claims stored the recognized data, while the latter claims retrieve additional data based on the recognized data.

In *Recognicorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322 (Fed. Cir. 2017), the Federal Circuit found the patent claim at issue to be directed toward the abstract idea of "encoding and decoding image data." *Recognicorp*, 855 F.3d at 1324. The claim at issue in *Recognicorp* recited:

> A method for creating a composite image, comprising:
>
> displaying facial feature images on a first area of a first display via a first device associated with the first display, wherein the facial feature images are associated with facial feature element codes;
>
> selecting a facial feature image from the first area of the first display via a user interface associated with the first device;
>
> wherein the first device incorporates the selected facial feature image into a composite image on a second area of the first display, wherein the composite image is associated with a composite facial image code having at least a facial feature element code and wherein the composite facial image code is derived by performing at least one multiplication operation on a facial code using one or more code factors as input parameters to the multiplication operation; and
>
> reproducing the composite image on a second display based on the composite facial image code.

*Id.* The Federal Circuit described the claim as a "method whereby a user displays images on a first display, assigns image codes to the images through an interface using a mathematical formula, and

then reproduces the image based on the codes." *Id.* at 1326. The Federal Circuit found that this method reflected "standard encoding and decoding." *Id.*

The Federal Circuit then explained that encoding and decoding data is "an abstract concept long utilized to transmit information." *Id.* (citing *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340–41 (Fed. Cir. 2017) (organizing, displaying, and manipulating data encoded for human- and machine-readability is directed to an abstract concept)). The court provided several examples of long-utilized methods of encoding and decoding of data to transmit information: "Morse code, ordering food at a fast food restaurant via a numbering system, and Paul Revere's 'one if by land, two if by sea' signaling system all exemplify encoding at one end and decoding at the other end." *Id.* Claim 1 of the '752 Patent likewise simply decodes an image to obtain information, an abstract concept.

Additionally, in *Secured Mail*, the Federal Circuit found claims directed to encoding and decoding a bar code invalid under both *Alice* steps. *Secured Mail*, 873 F.3d at 907. The *Secured Mail* claims "provide[d] a method whereby a barcode is generated, affixed to a mail object, and sent through the mail system [and t]hen, upon receipt, the barcode is scanned, and data corresponding to the sender is sent to the recipient over the network and displayed on the recipient's device." *Id.* at 910–11. The Federal Circuit found that "each step of the process is directed to the abstract process of communicating information about a mail object using a personalized marking." *Id.* at 911. And because the claims were "non-specific and lack[ed] technical detail," utilizing "well known" technologies and generic hardware, the Federal Circuit concluded that the claims lacked an inventive concept. *Id.* at 912.

The idea underlying Claim 1 of the '752 Patent is just as abstract as those of the *Content Extraction*, *Recognicorp*, and *Secured Mail* claims. Claim 1 of the '752 Patent does not include

any specific limitations or steps regarding extracting data or decoding the data. Rather, all of the steps required to carry out the method are directed to the generic, conventional ideas of recognizing an image, decoding the image, and then doing something based upon the decoded information. *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 992 (Fed. Cir. 2014) (finding claim directed to "the well-known concept of categorical data storage, *i.e.*, the idea of collecting information in classified form, then separating and transmitting that information according to its classification, is an abstract idea that is not patent-eligible"). That Claim 1 of the '752 Patent sends and receives the decoded information over a network does not make it any less abstract. *See, e.g.*, *Ultramercial*, 772 F.3d at 716 (noting that "the use of the Internet is not sufficient to save otherwise abstract claims from ineligibility under § 101") (citation omitted).

Claim 1 thus differs from the claims that the Federal Circuit has held to be eligible because they claimed specific means for improving specific computer technology or solving specific computer problems. For example, the Federal Circuit addressed the eligibility of claims directed to improving computer security in *Ancora Technologies, Inc. v. HTC America, Inc.*, 908 F.3d 1343 (Fed. Cir. 2018). In that case, the Federal Circuit held the claims eligible and stated, "Improving security—here, against a computer's unauthorized use of a program—can be a non-abstract computer-functionality improvement . . . done by a specific technique that departs from earlier approaches to solve a specific computer problem." *Id.* at 1348. The court was persuaded because "[t]he claimed method here specifically identifies how that functionality improvement is effectuated in an assertedly unexpected way." *Id.* The same is not true of Claim 1 of the '752 Patent. It does not require a specific and unconventional technique, and it does not identify any specific improvement to computer functionality, much less an unexpected way of effectuating such an improvement.

13

By only claiming the desired result—recognizing and retrieving information associated with a pattern like a barcode—without describing any specific roadmap for doing so, Claim 1 of the '752 Patent falls short of claiming eligible subject matter under § 101. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015); *Secured Mail*, 873 F.3d at 910–11.

### 3. *Alice* Step 2: The claims of the Asserted Patents contains no inventive concept sufficient to transform the abstract idea into patent-eligible matter.

Because the claims of the Asserted Patents are directed to an abstract idea, the Court must next determine whether it contains an "inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice*, 134 S. Ct. at 2357 (internal quotations omitted). To pass this test, the claims "must include additional features" that "must be more than well-understood, routine, conventional activity." *Ultramercial*, 772 F.3d at 715 (quotation omitted). Here, the claims are broadly generic and do not contain meaningful limitations that would restrict it to a non-routine, specific application of the abstract idea.

Each of the steps recited in Claim 1 of the '752 Patent is described only at a high level of generality as "capturing a digital image," "detecting" a barcode, "decoding [the barcode] . . . to obtain a decode string," "sending the decode string to a remote server for processing," "receiving information . . . from the remote server," and "displaying the information." To accomplish these steps, Claim 1 of the '752 Patent recites the use of a "portable electronic device," "visual detection applications," and a "remote server." But the claimed "portable electronic device" can be virtually any device capable of taking a photograph ('752 Pat., 1:58–61), the "visual detection applications" can be a variety of off-the-shelf applications that users have installed on their smartphones (*id.*, 3:29–33), and the claimed "server" is implemented using generic hardware (*id.*, 9:65–10:1) to perform generic website functions (*id.*, 5:33–42).

14

The applicant's own characterizations demonstrate that the claimed components do not "improve the functioning of the computer itself," *Alice*, 134 S. Ct. at 2359, for example by disclosing an "improved, particularized method of digital data compression," *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014), or improving "the way a computer stores and retrieves data in memory," *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016). For example, in *Enfish*, the Federal Circuit distinguished the claims from others that "simply add[ed] conventional computer components to well-known business practices," *id.* at 1338, holding instead that "they [we]re directed to a specific improvement to the way computers operate," *id.* at 1336. In particular, the unconventional structure of the database resulted in "increased flexibility, faster search times, and smaller memory requirements." *Id.* at 1337. Unlike *Enfish*, nothing in Claim 1 of the '752 Patent shows any unconventional method that would amount to a "specific improvement to the way computers operate." Therefore, the focus of the '752 Patent is not "on [a] specific asserted improvement in computer capabilities" but instead "on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Id.* at 1336.

There is simply nothing "inventive" about using a known process (*i.e.*, decoding a barcode) to access a website. *See Secured Mail*, 873 F.3d at 912. Moreover, the abstract functional descriptions in Claim 1 of the '752 Patent are devoid of any technical explanation as to how to implement the purported invention in an inventive way. *See In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 615 (Fed. Cir. 2016) (claims failed *Alice*'s step 2 where specification limited its discussion of "additional functionality" of conventional components "to abstract functional descriptions devoid of technical explanation as to how to implement the invention"). Similar to the invalidated claim in *Recognicorp*, nothing in Claim 1 of the '752 Patent "'transforms' the

15

abstract idea of . . . decoding," *i.e.*, recognizing information, "into patent-eligible subject matter." *Recognicorp*, 855 F.3d at 1328 (citing *Alice*, 134 S. Ct. at 2357).

Courts have repeatedly held that the presence of generic hardware and software like the kind recited in Claim 1 of the '752 Patent does not make an otherwise abstract idea patent-eligible. *See, e.g.*, *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."); *Content Extraction*, 776 F.3d at 1348 ("At most, [the] claims attempt to limit the abstract idea of recognizing and storing information from hard copy documents using a scanner and a computer to a particular technological environment. Such a limitation has been held insufficient to save a claim in this context."); *Bancorp*, 687 F.3d at 1276–77. In addition, an "abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as [mobile services]." *Intellectual Ventures I LL v. Capital One Bank U.S.A.*, 792 F.3d 1363, 1366 (Fed. Cir. 2015).

The other claims of the Asserted Patents include similar limitations regarding the abstract idea, but they do not include the specificity necessary to claim patent-eligible subject matter. They also do not include anything other than generic components and processes such that they fail to contain an inventive concept. Accordingly, the other claims suffer from the same flaws as Claim 1 of the '752 Patent. These claims also do not contain any inventive concept amounting to "significantly more" than the abstract idea. They do not inject any unconventional computer components or techniques. The claims simply apply the same abstract concept of data recognition and retrieval, and the Federal Circuit has been clear that the abstract idea itself cannot confer an inventive concept. *See BSG Tech*, 899 F.3d at 1290 ("It has been clear since *Alice* that a claimed

invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept.").

Because the claims of the Asserted Patents are altogether devoid of any "inventive concept," they are patent-ineligible under § 101. *See Alice*, 134 S. Ct. at 2359–60.

### B.      There Are No Claim Construction or Factual Disputes Preventing the Court From Ruling on This Issue at the Rule 12 Stage.

The issue of the patent eligibility is ready for the Court's consideration because there are no factual or claim construction issues. This case is markedly different from *Berkheimer* and the line of cases where factual issues have been found to exist in *Alice* Step 2. In *Berkheimer*, the Federal Circuit noted that the specification explicitly "describe[d] an inventive feature that store[d] parsed data in a purportedly unconventional manner." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018). The court added that "[t]he improvements in the specification, to the extent they are captured in the claims, create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities . . . so we must analyze the asserted claims and determine whether they capture these improvements." *Id.* After finding that some claims "contain limitations directed to the arguably unconventional inventive concept described in the specification," the court held that there was a question of fact as to whether those claims perform "well-understood, routine, and conventional activities." *Id.* at 1370.

It should be noted, however, that "[t]he *Berkheimer* [] cases do not stand for the proposition that a plaintiff can avoid dismissal simply by reciting in the complaint that the invention at issue is novel and that the inventive concept resides in the abstract idea itself." *First-Class Monitoring, LLC v. Ups of Am., Inc.*, 389 F. Supp. 3d 456, 471 (E.D. Tex. 2019) (emphasis added). Furthermore, "[a]ny allegation about inventiveness, wholly divorced from the claims or the specification, does not defeat a motion to dismiss; only plausible and specific factual allegations

17

that aspects of the claims are inventive are sufficient." *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 538 (Fed. Cir. 2020) (internal quotations omitted).

Here, Symbology's bare and implausible allegations in the Complaint cannot defeat this motion; otherwise, Rule 12(b)(6) would be rendered toothless against plaintiffs who plead "magic words." (*See, e.g.*, Compl., ¶¶ 23-24, 28, 28, 33.) Patentee plaintiffs should not have the power to unilaterally declare that their claims are inventive. *See Appistry, Inc. v. Amazon.com, Inc.*, 195 F. Supp. 3d 1176, 1183, n.6 (W.D. Wash., 2016) *aff'd sub nom. Appistry, LLC v. Amazon.com, Inc.*, 676 F. App'x 1008 (Fed. Cir. 2017) ("Plaintiff's position is absurd. Requiring the Court to accept such facts or legal conclusions (even in the form of an early expert declaration) would permit any plaintiff to circumvent the § 101 inquiry on an early motion to dismiss or motion for judgment on the pleadings simply by including a few lines attesting to the novelty of the invention."). At the end of the day, what matters is what is claimed, and the patent claims nothing more than the abstract idea of data recognition and retrieval.

The Court's ineligibility analysis should also disregard Symbology's boilerplate legal conclusions about the inventive aspects of its asserted patent. *See Simio, LLC v. FlexSim Software Products, Inc.*, 983 F.3d 1353, 1366 (Fed. Cir. 2020) ("We disregard conclusory statements when evaluating a complaint under Rule 12(b)(6)."). For example, Symbology alleges that "[the Asserted Patents] provide improvements to conventional hardware and software systems and methods." (Compl., ¶¶ 24.) This is not a factual allegation—it is a legal conclusion by which Symbology attempts to unilaterally declare its patent is directed to eligible subject matter. *See Simio*, 983 F.3d at 1366 ("A statement that a feature 'improves the functioning and operations of the computer' is, by itself, conclusory."). The Court should disregard these statements.

Once Symbology's conclusory legal allegations about the inventiveness of its asserted patent are properly disregarded, there is nothing left to preclude a determination of ineligibility on the pleadings. Accordingly, DexCom's motion is ripe, and it should be granted.

## VII.   CONCLUSION

For the foregoing reasons, DexCom respectfully requests that the Court render judgment on the pleadings against Symbology and dismiss Symbology's claims in their entirety. Because leave to amend would be futile, DexCom requests dismissal with prejudice.

Dated: January 5, 2023

Respectfully submitted,

*/s/ Neil J. McNabnay*
Neil J. McNabnay
Texas Bar No.24002583
Ricardo J. Bonilla
Texas Bar No. 24082704
Rodeen Talebi
Texas Bar No. 24103958
Sarika Patel
Texas Bar No.24073520
Alexander H. Martin
Texas Bar No. 24091828
mcnabnay@fr.com
rbonilla@fr.com
talebi@fr.com
patel@fr.com
martin@fr.com
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, Texas 19001
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)

**ATTORNEYS FOR DEFENDANT DEXCOM, INC.**

## CERTIFICATE OF COMPLIANCE WITH THE COURT'S
## 35 U.S.C. § 101 MOTION PRACTICE ORDER

_____ The parties agree that prior claim construction is not needed to inform the Court's analysis as to patentability.

__X__ The parties disagree on whether prior claim construction is not needed to inform the Court's analysis as to patentability.

_/s/ Ricardo J. Bonilla_
Ricardo J. Bonilla

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy has been electronically filed using the CM/ECF filing system on January 5, 2024, which automatically sends email notifications to all counsel of record and which will permit viewing and downloading of same from the CM/ECF system.

_/s/ Neil J. McNabnay_
Neil J. McNabnay