**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| SYMBOLOGY INNOVATIONS, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  2:23-CV-00473-JRG |
| | § | |
| DEXCOM, INC., | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

**<u>MEMORANDUM OPINION ORDER</u>**

Before the Court is the Renewed Motion for Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c) (the "Motion") filed by Defendant Dexcom, Inc. ("Dexcom"). (Dkt. No. 25.) In the Motion, Dexcom argues that the Asserted Patents claim unpatentable subject matter outside the scope of 35 U.S.C. § 101. Having considered the Motion, related briefing, and relevant authority, the Court finds that the Motion should be and hereby is **GRANTED**.[1]

## I.  BACKGROUND

Plaintiff Symbology Innovations, LLC ("Symbology") alleges infringement of U.S. Patent Nos. 7,992,773 ("the '773 Patent"), 8,424,752 ("the '752 Patent"), 8,651,369 ("the '369 Patent"), and 8,936,190 ("the '190 Patent") (collectively, the "Asserted Patents"). (Dkt. No. 18.) The Asserted Patents share a common specification and relate to systems and methods for "enabling a portable electronic device to retrieve information about an object when the object's symbology, *e.g.*, a barcode, is detected." *See, e.g.*, '752 Patent at Abstract.

---

[1] Dexcom filed an earlier Motion for Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c). (Dkt. No. 10.) That motion is **DENIED-AS-MOOT** in light of the First Amended Complaint. Dexcom also filed an Unopposed Motion for Oral Hearing (Dkt. No. 32) concerning its Rule 12(c) Motion. Finding that no oral argument is necessary, the Motion for Oral Hearing is **DENIED-AS-MOOT**.

## II.     LEGAL STANDARD

### A.     Rule 12(c)

After the pleadings are closed, but early enough not to delay trial, a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). "The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss…[t]he plaintiff must plead 'enough facts to state a claim for relief that is plausible on its face.'" *Guidry v. American Public Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). In a patent case, the Federal Circuit reviews procedural aspects of motions for judgment on the pleadings using regional circuit law. *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1325–26 (Fed. Cir. 2017).

### B.     Patent Eligibility

Anyone who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" may obtain a patent. 35 U.S.C. § 101. Since patent protection does not extend to claims that monopolize the "building blocks of human ingenuity," claims directed to laws of nature, natural phenomena, and abstract ideas are not patent eligible. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216–17 (2014). The Supreme Court instructs courts to distinguish between claims that set forth patent-ineligible subject matter and those that "integrate the building blocks into something more." *Id.*

The Court determines whether patent claims cover ineligible subject matter using a two-step analytical framework set out by the Supreme Court of the United States in *Alice.* 573 U.S. 208. At the first step, the Court evaluates whether the claims are directed to ineligible subject matter, such as an abstract idea. *Id.* at 217. To do so, the Court looks to the claims' "character as a whole." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). Although all claims embody abstract ideas and other ineligible subject matter at some level, the Court's task is to

examine "whether the claims [] focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016). In cases like this, the Court is to "consider the claim as a whole ... in light of the specification ... [and] whether the focus of the claims is on a specific asserted improvement in computer capabilities or, instead, on a process that qualifies as an abstract idea for which computers are invoked merely as a tool." *Packet Intelligence LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1309 (Fed. Cir. 2020) (quoting *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1304 (Fed. Cir. 2018)).

If the challenged claims recite a patent-ineligible concept, the Court then "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent eligible application." *Alice*, 573 U.S. 208, 217–18 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78–79 (2012)). This step is satisfied when the claim limitations "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014) (quoting *Alice*, 573 U.S. at 225). The Federal Circuit has explained that "[w]hile the ultimate determination of eligibility under § 101 is a question of law, like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018). As such, "[t]he question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact" that must be "proven by clear and convincing evidence." *Berkheimer v. HP Inc.*, 881 F.3d

1360, 1368 (Fed. Cir. 2018). Accordingly, "factual disputes about whether an aspect of the claims is inventive may preclude dismissal at the pleadings stage under § 101." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1318 (Fed. Cir. 2019). However, "[a]ny allegation about inventiveness, wholly divorced from the claims or the specification" does not defeat a motion to dismiss; only "plausible and specific factual allegations that aspects of the claims are inventive are sufficient." *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 538 (Fed. Cir. 2020) (quoting *Cellspin* 927 F.3d at 1317).

### C.     Determining Patent Eligibility Before Claim Construction

"Where it is clear that claim construction would not affect the issue of patent eligibility, there is no requirement that the court go through that exercise before addressing the eligibility issue." *Pres. Wellness Techs. LLC v. Allscripts Healthcare Sols.*, No. 2:15-CV-1559-WCB, 2016 WL 2742379, at *6 (E.D. Tex. May 10, 2016) (Bryson, J.) (citing *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1274 (Fed. Cir. 2012)). Where the "'basic character of the claimed subject matter' in dispute is clearly evident to the Court," no further construction of the claims is required. *Wireless Media Innovations, LLC v. Maher Terminals, LLC*, 100 F. Supp. 3d 405, 413 (D.N.J. 2015), *aff'd*, 636 Fed. Appx. 1014 (Fed. Cir. 2016).

## III.     DISCUSSION

### A.     The "Asserted Patents" and "Asserted Claims"

As a preliminary matter, although it is not the primary focus of the parties' briefing, there appears to be a dispute concerning what claims and what patents are at issue in this case and are covered by this Motion. Symbology contends that the "Asserted Patents" in this case are the '752 Patent, '369 Patent, and '190 Patent. (Dkt. No. 27 at 7.) Symbology omits the '773 Patent from its list. Further, Symbology contends that the "Asserted Claims" are limited to claims 1, 5, 7, 16, and 24 of the '752 Patent, claims 1, 5, 7, 16, and 24 of the '369 Patent, and claims 1, 5, 7, 16, and 20

of the '190 Patent. (*Id.*) Symbology, in creating this list, implies that Dexcom's Motion may only address these claims. (*See* Dkt. No. 27 at 7; Dkt. No. 18.) For example, Symbology criticizes Dexcom multiple times for analyzing claim 17 of the '752 Patent because, according to Symbology, that claim is "not even being asserted." (Dkt. No. 27 at 7.)

Dexcom does not squarely address this argument in its reply brief. However, Dexcom's Motion addressed at least whether or not the '773 Patent is asserted in this case. Dexcom argues in a footnote that the Motion covers the '773 Patent because the First Amended Complaint states, "Plaintiff alleges infringement on the part of Defendant of the '773 Patent." (Dkt. No. 25 at 2, n.1.)

The Court finds that the '773 Patent is an Asserted Patent. Both Symbology's Original Complaint (Dkt. No. 1) and its First Amended Complaint (Dkt. No. 18) contain only three "counts" of infringement: one for the '752 Patent, one for the '369 Patent, and one for the '190 Patent. However, Symbology's First Amended Complaint contains numerous specific factual allegations concerning the '773 Patent, specific accusations of infringement of the '773 Patent, and a specific request for relief from that infringement.

The First Amended Complaint attaches all four patents, with the '773 Patent attached as Exhibit A. (Dkt. No. 18-1.) The first sentence of the First Amended Complaint states:

> Plaintiff files this complaint for patent infringement of ***four (4) patents - U.S. Patent Nos. 7,992,773 (hereinafter "the '773 Patent")***, 8,424,752 (hereinafter "the '752 Patent"), 8,651,369 (hereinafter "the '369 Patent"), and 8,936,190 (collectively "the Symbology Patents").

(Dkt. Nos. 18 at 1.) In the section titled "Patents-in-Suit," the first patent listed and discussed is the '773 Patent. (*Id.* at 2-3.) Symbology states in that section, "Plaintiff alleges infringement on the part of Defendant of the '773 Patent." (*Id.* at 3.) The First Amended Complaint also defines "the Symbology Patents" as including the '773 Patent, and in the "Prayer for Relief," Symbology requests an Order from this Court "enjoining Defendant, its agents, officers, servants, employees,

attorneys, and all persons in active concert or participation with Defendant who receives notice of the order from further infringement of **Symbology Patents**." (*Id.* at 14.)

Having concluded that the "Asserted Patents" include all four patents in the First Amended Complaint, the Court now turns to the issue of which claims of those patents are at issue in this Motion. Symbology contends that unasserted claims—*i.e.*, claims not specifically identified in its First Amended Complaint—are not at issue. Generally, after a plaintiff narrows the asserted claims in an amended complaint, the Court does not have jurisdiction over the unasserted claims. *See e.g.*, *Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.*, 665 F.3d 1269 (Fed. Cir. 2012). However, alleged infringers may keep "'unasserted' claims before the district court by maintaining their respective counterclaims that allege[] invalidity of '[e]ach claim of the [asserted patent].'" *Miller Mendel, Inc. v. City of Anna, Texas*, No. 2022-1753, 2024 WL 3448673 (Fed. Cir. July 18, 2024) (quoting *Voter Verified, Inc. v. Premier Election Sols., Inc.*, 698 F.3d 1374 (Fed. Cir. 2012)).

When Symbology filed this suit, its complaint alleged infringement of the Asserted Patents without specifically identifying any specific asserted claims. (Dkt. No. 1.) Accordingly, Dexcom filed counterclaims seeking declaratory judgment that all of the "claims of the Patents-in-Suit are invalid" for failing to comply with § 101. (Dkt. No. 6.) Symbology later narrowed the scope of its claims, but Dexcom did not do the same for its counterclaims. Dexcom continues to maintain that the original filing of this action created "an actual controversy . . . as to the validity of the claims of the Patents-in-Suit." (Dkt. No. 26 at 16.) Accordingly, Dexcom in its Motion requests that the Court determine that "[t]he claims"—*i.e.*, all claims—of the Asserted Patents are directed to ineligible subject matter. The Court finds that all claims of the Asserted Patents are at issue in this case and in its Motion in light of Dexcom's counterclaims.

### B.      Representative Claim

Dexcom contends that "Claim 1 of the '752 Patent is representative of the other claims of the Asserted Patents because the claims contain the same essential elements." (Dkt. No. 25 at 8.) According to Dexcom, all independent claims of the Asserted Patents—claims 1, 12, and 15 of the '773 Patent; claims 1, 17, and 24 of the '752 Patent; claims 1, 17, and 24 of the '369 Patent; and claims 1, 17, and 20 of the '190 Patent—generally include the limitations:

(1) capturing an image with a camera or a scanner;

(2) detecting a symbology;

(3) decoding the symbology to obtain a "decode string";

(4) sending the "decode string" to a "server" for processing;

(5) receiving information from the "server" in response; and

(6) displaying the information received.

(Dkt. No. 25 at 8.)  Some of these independent claims relate to "[a] computer application stored on a computer-readable medium and executed by a processing device incorporated in a portable electronic device" or a "symbology management application" performing the six functions listed above. (*Id.*) As such, Dexcom argues that all of the independent claims are directed to the same abstract idea as claim 1 of the '752 Patent.

Further, Dexcom contends that the dependent claims, despite reciting some additional limitations, are likewise directed to the same abstract idea as claim 1 of the '752 Patent. (*Id.*) According to Dexcom, these claims either "suffer from the same results-oriented (and thus ineligible) claim language as claim 1 of the '752 [Patent]" or "recite insignificant pre- or post-solution activity, such as allowing a user to select certain preferences or store data." (*Id.*) For example, some of the dependent claims recite limitations for (1) running visual detection applications in the background; (2) configuring visual detection applications to automatically

detect barcodes; and (3) analyzing the decode string and selecting appropriate application to decode. (*Id.*) Dexcom argues that these steps are results-oriented and cannot be used to negate the representativeness of claim 1 of the '752 Patent. Other dependent claims recite (1) enabling users to select certain preferences; (2) detecting barcodes and symbology based on user request; (3) sending instructions to visual detection applications and remote servers; (4) enabling the user to store information; (5) providing e-commerce options to the user; and  (6) decoding barcodes and symbology using visual search technology (*Id.* at 8-9.) The remaining claims recite activity like alerting the user and asking to decode a barcode, analyzing a decode string and selecting the appropriate application to decode, allowing the user to select an application to decode the barcode, and displaying information and images. *See, e.g.*, '752 Patent; '369 Patent claims 6, 10, 13, 14, 16, 19, 20, 21, and 22. Dexcom argues that these claims recite pre- or post-solution activity and likewise do not negate the representativeness of claim 1 of the '752 Patent.

Having analyzed every independent and dependent claim of all four asserted patents, Dexcom concludes that all of the claims are directed to the same basic invention and that claim 1 of the '752 Patent is representative of all claims of the four asserted patents. Thus, Dexcom argues that the Court's analysis of claim 1 of the '752 Patent should apply to all claims of the patents.

In response, Symbology argues that "Defendant fails to provide the Court with thoughtful analysis of specificity to the actual elements of the asserted patent claims at issue in this case." (Dkt. No. 27 at 7.) First, Symbology criticizes Dexcom for analyzing claim 17, which it contends "is not asserted." (*Id.*) Second, Symbology states that "Defendant fails in its analysis to address asserted claims such as Claims 5, 7, and 16 of each of the assert[ed] patents." (*Id.*) Third, Symbology argues that Dexcom's failure to discuss "visual detection applications" misrepresents what the claims are directed to:

> For example, Plaintiff specifically informed Defendant of the importance of the claim limitation that recites "visual detection applications." (Dkt. No. 18, ¶40). Yet, Defendant just brushes over this important element and lists it specifically not [*sic*] in its mischaracterization of Claim 1 of the '752 patent but instead only as a non-essential element appearing in dependent claim 8 of the '752 patent. . . . Additionally, the element/claim limitation "visual detection applications" . . . is not addressed at all by Defendant. (Mot. At 8-10).
>
> Thus, Defendant has not met its burden of [*sic*] to establish claim 1 of the '752 patent is representative.

(*Id.* at 7-8.)

The Court will treat claim 1 of the '752 Patent as representative for purposes of its § 101 analysis. Concerning Symbology's bare assertion that Dexcom "fails to provide the Court with thoughtful analysis," Dexcom cites and analyzes every single claim of all four asserted patents. (Dkt. No. 25 at 8-9.) Symbology is incorrect that "Defendant fails in its analysis to address asserted claims such as Claims 5, 7 and 16 of each of the assert[ed] patents." (Dkt. No. 27 at 7.) Those claims are cited and discussed in Dexcom's Motion. (Dkt. No. 25 at 8-9.) Dexcom's Motion includes a detailed comparison of claim 1 of the '752 Patent to all other claims of the '752 Patent to show that, internally, claim 1 is representatives of the '752 Patent as a whole. (*Id.*) Next, it compares the claims of the '752 Patent with the claims of the other Asserted Patents, specifically identifying which claims overlapped and for what patents. The Court finds that Dexcom's analysis is sufficient to make a prima facie case that claim 1 of the '752 Patent is representative of the other claims. (*Id.*)

While "[t]he initial burden of persuasion rests on the defendant to identify a rationale for treating a given claim or claims as representative of other asserted claims," that burden is neither permanent nor particularly onerous. *See PPS Data, LLC v. Jack Henry & Assocs., Inc.*, 404 F. Supp. 3d 1021, 1030–32 (E.D. Tex. 2019). Here, Dexcom made a prima facie showing that claim 1 of the '752 Patent is representative of the other claims. Dexcom's analysis was sufficiently

tethered to the claim language and addressed how the other claims contained "the same essential elements" as the representative claim and how additional limitations present in the other claims failed to alter the § 101 analysis. *See PPS Data*, 404 F. Supp. 3d at 1030–31 (recognizing that "the representativeness inquiry must be 'directly tethered to the claim language'") (quoting *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019)). Upon Dexcom establishing its prima facie case for the representativeness of claim 1 of the '752 Patent, the burden shifted to Symbology to identify and explain why particular limitations present in other claims are not sufficiently represented by claim 1 for purposes of the § 101 analysis. *See PPS Data*, 404 F. Supp. 3d at 1031 ("Once the defendant has proven a prima facie case demonstrating representativeness, the burden shifts to the plaintiff to identify limitations that are present in the asserted claims but that are not represented by the allegedly representative claim."). Symbology failed to do so.

Symbology argues that Dexcom failed to meet its burden to establish that claim 1 of the '752 Patent is representative, but it does not analyze any of the claims or identify any claim limitations that are not adequately represented by claim 1 of the '752 Patent. Symbology argues that Dexcom misrepresents the scope of the claims by its failure to include any discussion of the "visual detection applications" limitation. (Dkt. No. 27 at 7.) However, the "visual detection applications" limitation is included in every claim of the Asserted Patents. *See e.g.*, '752 Patent claims 1, 17, 24, and 27; '773 Patent claims 1, 12, and 15; '190 Patent 1, 17, and 20; and '369 Patent 1, 17, and 24. The fact that every claim includes this "important" limitation supports Dexcom's argument that claim 1 of the '752 Patent is representative.

Accordingly, the Court will consider claim 1 of the '752 Patent as representative of the other claims.

### C.      Claim Construction

Symbology argues that "Claim Construction is required with respect to at least the claim limitation 'one or more visual detection applications' that appears in the asserted claims identified in the operative complaint." (Dkt. No. 27 at 10.) All of the Asserted Patents are continuations of the same parent application, which issued as the '773 Patent. (*Id.*) During prosecution, the '773 Patent was narrowed to include the limitation "one or more visual detection applications" are configured to "run in the background," "automatically" decode "symbology," and send the decode string to another "visual detection application" residing on the portable device. (*Id.* at 11.) Symbology contends that the applicant did not rescind this limitation during prosecution of the Asserted Patents, meaning that all of the Patents "requir[e] visual detection to occur automatically and in the background." (*Id.*) Accordingly, Symbology argues that "a proper construction of this phrase is required in order to properly evaluate the merits of Defendant's 'abstract concept' arguments." (*Id.*)

To show that it is entitled to claim construction prior to a ruling on § 101, Symbology "must propose ***a specific claim construction*** or identify specific facts that need development ***and explain why those circumstances must be resolved*** before the scope of the claims can be understood for § 101 purposes." *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1360-61 (Fed. Cir. 2023). Dexcom contends that Symbology has done neither. (Dkt. No. 30 at 9.) First, according to Dexcom, Symbology has not proposed a specific construction for the term "one or more visual detection applications," despite vaguely asserting that the claims require visual detection systems to automatically run in the background. (*Id.*) Second, Dexcom contends that even if the Court were to find that Dexcom has proposed a construction—and even if the Court were to adopt such a construction—Symbology provides no explanation how that construction would affect the § 101 analysis. (*Id.*)

The Court agrees with Dexcom. Claim construction is not necessary to resolve the patent eligibility issues in this case. "Although the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter, claim construction is not an inviolable prerequisite to a validity determination under § 101." *Content Extraction & Transmission LLC*, 776 F.3d at 1349. Symbology does not propose a construction of the term "one or more visual detection applications." Even after Dexcom criticized Symbology in its reply brief for failing to include a specific claim construction, Symbology failed to supply a specific construction in its sur-reply, choosing instead to only argue that claim construction is, in its view, important.

Symbology's position that the "one or more visual detection applications" must "automatically run in the background" is not a specific construction. Further, "running in the background," and "automatically" running are different claim limitations found in the dependent claims of the patents. *See* '752 Patent claims 4 and 5. If Symbology means to argue that "automatically running in the background" is the definition of "visual detection applications," this argument is nonsensical both substantively and grammatically. To the extent that Symbology contends that the interplay of these limitations necessitates a specific construction of the term "one ore more visual detection applications," Symbology fails to disclose what that construction is.

However, even if the Court were to find that Symbology proposed "a specific claim construction" and if the Court were to adopt it, Symbology fails to explain how this proposed construction would affect the patent eligibility analysis. In its sur-reply brief, Symbology alleges that construction of this term is "*directly relevant* to the issue of whether the claims contain meaningful limitations that would restrict it to a non-routine, specific application of the abstract idea." (Dkt. No. 31 at 3 (emphasis included in original)(internal quotations omitted)). This

explanation fails to explain how construction of the term could prove or negate the assertion that the patents are restricted to non-routine, specific applications of an abstract idea. Thus, the Court finds it appropriate to proceed with the determination of patent eligibility at this stage.

### D.     Patent Eligibility

#### 1.     *Alice* Step One

Dexcom argues that the claims of the Asserted Patents are directed to the unpatentable, abstract idea of "data recognition and retrieval." (Dkt. No. 25 at 10.) Specifically, Dexcom argues that claim 1 of the '752 Patent only covers "a way to use a barcode to obtain information in order to access a webpage, consisting of nothing more than a set of basic ideas like capturing, detecting, decoding, sending, receiving, and displaying data." (*Id.*) Dexcom contends that this "this describes the most generic functional steps of a standard computer" and that "[s]uch a broad concept is not patent eligible because it 'recite[s] an abstraction—an idea, having no particular concrete or tangible form.'" (*Id.* at 11 (quoting *Ultramercial*, 772 F.3d at 715)). Dexcom further argues that the claim's recitation of "conventional components like a 'portable electronic device,' a 'remote server,' a 'display device,' and generic 'visual detection applications' does not make it any less abstract." (*Id.*)

To support its analysis, Dexcom compares the claims in this case to other claims invalidated by the Federal Circuit in *Content Extraction* (finding claims directed to the abstract idea of "data recognition and storage"), *Recognicorp* (finding claims directed to the abstract idea of "encoding and decoding data"), and *Secured Mail* (finding claims related to encoding and decoding a bar code to be abstract). (*Id.* at 11-13.) Like in its cited cases, Dexcom contends that claim 1 of the '752 Patent "does not include any specific limitations or steps regarding extracting data or decoding the data," but rather "all of the steps required to carry out the method are directed to the generic, conventional ideas of recognizing an image, decoding the image, and then doing

13

something based upon the decoded information." (*Id.* at 13-14.) Further, Dexcom distinguishes claim 1 "from the claims that the Federal Circuit has held to be eligible because they claimed specific means for improving specific computer technology or solving specific computer problems," since claim 1 "does not require a specific and unconventional technique, and it does not identify any specific improvement to computer functionality, much less an unexpected way of effecting such an improvement." (*Id.*)

In response, Symbology argues, "[r]elevant to his case is the holding distinguishing *Secure Mail Solutions* recently performed [*sic*] by Chief Judge Rodney Gilstrap of the Eastern District of Texas in the case *Intellectual Ventures II, LLC v. FedEx Corp.*, No. 2:16-CV-00980-JRG, 2018 WL 7823098 *3 (E.D. Tex. May 10, 2018)." (Dkt. No. 27 at 8.) Symbology contends that this Court, in *Intellectual Ventures II*, explained that "specific technologic modifications to solve a problem or improve the functioning of a known system generally produce patent-eligible subject matter." (*Id.*) Symbology, rather than analyze *Intellectual Ventures II* and compare it to the present case, provides a block quote of the Court's Order spanning nearly two pages of its brief. (*Id.* at 8-10.) Following this lengthy block quote, Defendant argues:

> Here, Defendant has not met its burden to even establish a representative claim, and thus again this analysis is premature. But assuming Defendant did, which it did not, similar to *Intellectual Ventures* [*II*], here the improvement over the prior art is explained above in the background section that is publicly available. To the extent, the Court takes the position that the prosecution history is not a part of the pleadings, Patentee Plaintiff respectfully asks that it be allowed leave to amend in the interest of justice to obtain a result based on the merits.
>
> Thus, the Court should deny Defendant's motion without prejudice at the present pleading stage.

(*Id.* at 10.)

This single paragraph is the full extent of Symbology's analysis. Symbology does not compare the facts of this case to *Intellectual Ventures II* or explain how the patents here claim

"technologic modifications to solve a problem or improve the functioning of a known system." (*Id.*) Symbology refers back to its background section but provides no analysis concerning it. The background section to which Symbology refers, provides a brief recitation of the prosecution history of the Asserted Patents including another page-length block quote of the examiner's reasons for allowance over prior art. (*Id.*)

In reply, Dexcom argues that the prosecution history of the Asserted Patents does not change the § 101 analysis. (Dkt. No. 30 at 5.) First, Dexcom notes that Symbology's recitation of the prosecution history in its background section relates entirely to the examiner's objections based on prior art invalidity, not eligibility under § 101. (*Id.*) Second, Dexcom contends that Symbology fails to distinguish the Asserted Patents from those the Federal Circuit found to be directed to an abstract idea. (*Id.*) According to Dexcom, Symbology's reliance on *Intellectual Ventures II* is misplaced. Dexcom argues that the claim in *Intellectual Ventures II* improved upon the technology itself, whereas the claims at issue here do not. (*Id.* at 6.) Accordingly, Dexcom argues that *Intellectual Ventures II* is inapposite, and Symbology does nothing to distinguish this case from the cases cited by Dexcom in its Motion.

In sur-reply, Symbology states, "[w]hen a complaint contains concrete allegations regarding the 'claimed combination's improvement to the functioning of the computer,' the asserted patents can survive a Rule 12(b)(6) motion at *Alice* step one.'" (Dkt. No. 31 at 1 (citing *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018))). According to Symbology, the First Amended Complaint includes such allegations establishing the non-abstract nature of the Asserted Claims. (*Id.* at 2.) For example, Symbology notes that the First Amended Complaint states:

> The features recited in the claims in the Symbology Patents provide improvements to conventional hardware and software systems and methods. The improvements

render the claimed inventions of the Symbology Patents non-generic in view of
conventional components.

(Dkt. No. 18 at ¶ 24.)[2] Accordingly, Symbology argues that "[t]he facts as plead are plainly
relevant to the non-abstract nature of the Asserted Claims."

The Court finds that the claims of the Asserted Patents are directed to the abstract idea of
data recognition and retrieval. At *Alice* Step One the Court looks to the claims' "character as a
whole" to determine whether the claims are directed to ineligible subject matter, such as an abstract
idea. *Enfish*, 822 F.3d at 1335. As shown by claim 1 of the '752 Patent reproduced below, the
claims include only results-based functional language that describes a desired outcome—namely,
obtaining and displaying information about an object by detecting symbology (*e.g.*, a barcode)
related to that object:

1. A method comprising:

capturing a digital image using a digital image capturing device that is part
of a portable electronic device;

detecting symbology associated with an object within the digital image
using a portable electronic device;

decoding the symbology to obtain a decode string using one or more visual
detection applications residing on the portable electronic device;

sending the decode string to a remote server for processing;

receiving information about the object from the remote server wherein the
information is based on the decode string of the object;

displaying the information on a display device associated with the portable
electronic device.

'752 Patent claim 1. At a high level, claim 1 of the '752 Patent recites the functional steps of: (1)
capturing an image using a portable electronic device; (2) detecting data (symbology associated

---

[2] Symbology only cites two other paragraphs from the First Amended Complaint. The first relates to the
"conventional[ity]" of the claims, part of the Step Two inquiry. (Dkt. No. 18 at ¶ 23.) The second relates to whether
the limitations are "well-understood, routine, or conventional," which is also part of *Alice* Step Two. (*Id.* at ¶ 25.)

with an object) in the image; (3) decoding the data (symbology) into a different type of data (decode string); (4) sending this second type of data to a remote server for processing; (5) receiving information back from the remote server related to the data sent; (6) displaying the information on a display device. *Id.*

Steps (2)–(5) reflect "standard encoding and decoding, an abstract concept long utilized to transmit information." *RecogniCorp*, 855 F.3d at 1326. "Morse code, ordering food at a fast food restaurant via a numbering system, and Paul Revere's 'one if by land, two if by sea' signaling system all exemplify encoding at one end and decoding at the other end." *Id.* All of these steps "can be performed in the human mind, or by a human using a pen and paper." *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016). The fact that step (1) requires capturing an image digitally and performing the method with a computer does not make the claims any less abstract. *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014). Step (6), displaying the information, is merely post-solution activity. These steps do little more than describe the desired outcome. They fail to limit the claims to any particular technological solution that would transform the claims into a patent-eligible invention. The "purely functional nature" of claim 1 "confirms that it is directed to an abstract idea, not to a concrete embodiment of that idea." *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016).

Symbology's counterarguments are unpersuasive. To start, Symbology states at the beginning of its response brief that "[t]he motion should be denied for at least four (4) independent reasons," and then it proceeds to list only three, none of which pertain to *Alice* Step One. (Dkt. No. 27 at 1-2.) Symbology's response brief does have a section titled "Alice Step One," but it is equally devoid of substantive argument. Symbology's Step One analysis amounts to little more than a

two-page block-cite of another decision by this Court with no analysis of the facts of either this case or the case cited. Instead, Symbology repeatedly states that the claims recite an "improvement over the prior art," but it never says what that improvement is. (Dkt. No. 27 at 10; Dkt. No. 31 at 1.)

Having found the arguments in Symbology's briefing unpersuasive, the Court turns to the rest of Symbology's First Amended Complaint to determine if any well-pled facts support Symbology's general assertion that the Asserted Claims provide "a technological solution to the way a computer functions" or otherwise demonstrate the non-abstract nature of the claims. The First Amended Complaint, like Symbology's Response, recites only vague and conclusory statements that "[t]he features recited in the claims in the Symbology Patents provide improvements to conventional hardware and software systems and methods" and that "[t]he improvements render the claimed inventions of the Symbology Patents non-generic in view of conventional components." (Dkt. No. 18 at ¶ 24.)

While the Court accepts well-pled facts as true and views all facts in the light most favorable to the Symbology, it is not required to accept Symbology's legal conclusions as true. *Iqbal*, 556 U.S. at 678. The First Amended Complaint's conclusory statements directed to *Alice* Step One, including that the claims of the Asserted Patents "provide improvements to conventional hardware and software systems and methods," are bare conclusions directed to the legal question of patent eligibility and are not presumed true at this stage. *See Simio, LLC v. FlexSim Software Prod., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020). The First Amended Complaint never states how the claims improve the hardware or software, just that they improve them. These are not "specific and plausible statements of fact" The First Amended Complaint is devoid of any explanation ***how*** the Asserted Patents provide improvements to the way a computer functions.

Finding no indication of patent eligibility in Symbology's First Amended Complaint, the Court turns to the specification of the Asserted Patents.[3] The Court's review of the specification confirms that the Asserted Patents do not recite a "a technological solution to the way a computer functions" as Symbology claims. Indeed, the specification repeatedly and unequivocally recognizes that symbology readers and decoders existed prior to the present invention:

> Many types of detection systems are available to enable a user to select an object. One such system may be an image capture device containing a charge couple device (CCD) or camera, where the user may scan or take a picture of symbology (e.g., a barcode) placed on or associated with an object. Portable devices (e.g., iPhone from Apple, Android from HTC, etc.) may include decoding software to be used to decode the scanned barcode symbology…. Furthermore, if the portable electronic device contains an image capture device (e.g., a camera) and character recognition software, the user may take a picture of the object and the character recognition software may be used to decode the image and/or name of the object.

'752 Patent at 2:67-3:11. The specification goes further to list several commercially available examples of "applications that may be downloaded to portable electronics devices [that] include symbology scanning and/or decoding programs." '752 Patent at 3:29-33. The specification explains that "[t]he use of an image sensor to read symbology, *e.g.*, a barcode, is known in the art and systems employing such technology are commercially available." '752 Patent at 8:47-50. Against the backdrop of these existing scanning and decoding applications, the specification describes the problem addressed by the Asserted Patents as the following:

> [W]hen a user wishes to scan an object, the user must then select an application on the portable electronic device that is capable of accomplishing the desired functions. Since a user may have dozens of applications loaded on his or her portable electronic device, it may be difficult to select the appropriate application for executing the scanning functions.

---

[3] The Asserted Patents all share a common specification, so the Court will, for simplicity's sake, cite only to the specification of the '752 Patent.

'752 Patent at 3:34-39. The specification then describes that the Asserted Patents solve this problem by "provid[ing]for the automatic selection of scanning application upon recognition of applicable symbology." *Id.* at 3:39-41.

Neither the claims nor specification provide any *technical* solution to accomplish this feat, and the "mere automation  of manual processes using generic computers does not constitute a patentable improvement in computer technology." *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017). Indeed, the problem according to the patents is really one of human inability—namely, the difficulty for the user to select a suitable application to accomplish the scanning/decoding function. As such, the Asserted Patents seek to solve a human problem, not a technical problem. *See Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1316 (Fed. Cir. 2019) ("[T]he need to perform tasks automatically is not a unique technical problem.").

Having reviewed the briefing, the Complaint, and the specification of the Asserted Patents, the Court finds no factual basis to support Symbology's assertion that the Asserted Patents "recite a technical solution to a problem arising in the realm of computing networks." (Dkt. No. 18 at 11). The claims here are comparable to those in Dexcom's cited cases. Indeed, the Federal Circuit in *Secured Mail* dealt with barcode scanners in a similar context and found those claims to also be directed to an abstract idea. *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 906 (Fed. Cir. 2017). Much like the claims in that case, claim 1 of the '752 Patent is "not directed to a new barcode format, an improved method of [decoding] or scanning barcodes, or similar improvements in computer functionality," but rather claims a method for scanning a barcode to have a general-purpose computer retrieve and present information. *See Secured Mail*, 873 F.3d at 910-11. Notably, Symbology does not attempt to distinguish *Secured Mail* from the facts of the present case.

20

In sum, the Court finds the claims are directed to an abstract idea, the Court next considers the elements of the claims individually and as an ordered combination to determine whether they transform the claim into a patent eligible application. *Alice*, 573 U.S. 208, 217-18.

### 2.    *Alice* **Step Two**

Dexcom argues that "the claims are broadly generic and do not contain meaningful limitations that would restrict [them] to a non-routine, specific application of the abstract idea." (Dkt. No. 25 at 15.) Specifically, Dexcom contends that "[e]ach of the steps recited in Claim 1 of the '752 Patent is described only at a high level of generality as 'capturing a digital image,' 'detecting' a barcode, 'decoding [the barcode] . . . to obtain a decode string,' 'sending the decode string to a remote server for processing,' 'receiving information . . . from the remote server,' and 'displaying the information,'" and that these steps are accomplished using generic and readily available hardware such as a "portable electronic device," "visual detection applications," and a "remote server." (*Id.*) Dexcom argues that there is "nothing in Claim 1 of the '752 Patent [that] shows any unconventional method that would amount to a specific improvement to the way computers operate," but instead "the focus of the '752 Patent is . . . on a process that qualifies as an 'abstract idea' for which computers are merely invoked merely as a tool." (*Id.* at 16 (quotation omitted)).

In response, Symbology argues that "there is a material factual dispute to the question of 'whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field.'" (Dkt. No. 27 at 12 (quoting *Berkheimer v. HP, Inc*., 881 F.3d 1360, 1368 (Fed. Cir. Feb. 2018))). According to Symbology, Dexcom fails to meet its burden because it "does not even provide a declaration from a single skilled artisan to aid the Court." (*Id.*) Symbology contends that Dexcom makes a "circular argument" and that "the only 'evidence' provided by [Dexcom] is to cite to a case involving different patents, different parties and say

21

follow what the other judge did."[4] (*Id.*) Further, Symbology contends that Dexcom does not provide any evidence of the state of the art or any argument contradicting the statements of allowance in the original parent application.

In reply, Dexcom argues that there are no factual disputes preventing a finding that the claims at issue contain no more that well-understood, routine, and conventional limitations. Although Symbology argues that there is a "material factual dispute" precluding resolution at this stage, Dexcom argues that Symbology "fails . . . to identify any specific factual dispute that would change the § 101 analysis." (Dkt. No. 30 at 8.) As with claim construction issues, Dexcom contends that Symbology must "identify specific facts that need development and explain why those circumstances must be resolved before the scope of the claims can be understood for § 101 purposes." (*Id.* (quoting *Trinity*, 72 F.4th at 1361)).

In sur-reply, Symbology contends that Dexcom "fails to meet its burden to deny the [First Amended Complaint's] factual basis as to 'whether a claim element or combination of elements is well-understood, routine and conventional to a skill artisan in the relevant field,' which is a question of fact that must be 'proven by clear and convincing evidence.'" (Dkt. No. 31 at 1 (quoting *Berkheimer*, 881 F.3d at 1368)). According to Symbology, the First Amended Complaint "contains specific and plausible statements of fact establishing . . . the inventive concepts contained in the Asserted Claims." For example, the First Amended Complaint recites:

> The system(s) and methods of the Symbology Patents include software and hardware that do not operate in a conventional manner. For example, the software is tailored to provide functionality to perform recited steps and the hardware (e.g., portable electronic device) is configured (and/or programmed) to provide functionality recited throughout the claims of the Symbology Patents.

(Dkt. No. 18 at ¶ 23.)

---

[4] This argument follows shortly after Symbology quotes an Order from this Court in an unrelated case for nearly two pages without providing any legal analysis concerning the quoted case. (*See* Dkt. No. 27 at 8-10.)

> The features and recitations in the claims of the Symbology Patents are not those that would be well-understood, routine, or conventional to one of ordinary skill in the art at the time of the invention.

(*Id.* at ¶ 25.)

The Court finds that the limitations of claim 1 of the '752 Patent, both individually and as an ordered combination, do not "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Content Extraction*, 776 F.3d at 1347–48 (quoting *Alice*, 573 U.S. at 225).

Claim 1 of the '752 Patent recites the functional steps of: (1) capturing an image using a portable electronic device; (2) detecting data (i.e., symbology associated with an object) in the image; (3) decoding the data (i.e., symbology) into a different type of data (i.e., decode string); (4) sending this second type of data to a remote server for processing; (5) receiving information back from the remote server related to the data sent; (6) displaying the information on a display device. Each of these limitations individually describe routine functions that have existed in computers long before these patents (and some which simply describe the act of communication itself). In combination, they describe a basic barcode scanner, something that the patent acknowledges was well-known at the time of the invention.

Although Symbology argues that factual issues preclude dismissal, it fails to identify any. Symbology says there is a dispute as to "whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field" (*see* Dkt. No. 27 at 12), but that is Step Two inquiry itself, not a "subsidiary fact questions which must be resolved en route to the ultimate legal determination." *Aatrix Software*, 882 F.3d at 1128. As with the alleged claim construction issue, Symbology must identify a specific factual issue "and explain why those circumstances must be resolved before the scope of the claims can be understood for § 101 purposes." *Trinity*, 72 F.4th at 1361. It failed to do so.

Symbology's arguments attacking the sufficiency of the evidence in Dexcom's Motion are unpersuasive. First, Symbology cites no authority that Dexcom must support its Rule 12(c) Motion with expert testimony. Second, contrary to Symbology's arguments, there is ample evidence in the record concerning the state of the art. The shared specification itself confirms that the Asserted Patents involve little more than the application of well-understood, routine, and conventional practices.

Concerning the first and second steps, "capturing a digital image using a digital image capturing device that is part of a portable electronic device" and "detecting symbology associated with an object within the digital image using a portable electronic device," the specification provides the following:

> It is increasingly common for individuals to own and carry portable electronic devices…. Using any applicable visual detection device (e.g., a camera, scanner, or other device) on the portable electronic device, the user may select an object by scanning or capturing an image of symbology (e.g., barcodes) associated with the object…. Many types of detection systems are available to enable a user to select an object.

'752 Patent at 1:22-24, 2:57-65.

> Knowledge of the art reveals that may different types of scanner currently exist and the inventor realizes that the type of scanner would depend upon the type of symbology that is utilized for the particular objects…. The use of an image sensor to read symbology, e.g., a barcode, is known in the art and systems employing such technology are commercially available[.]

'752 Patent at 8:34-37, 8:47-50. Likewise, and as discussed above with respect to *Alice* Step One, the specification concedes that the third step of "decoding the symbology to obtain a decode string using one or more visual detection applications residing on the portable electronic device," was a conventional practice at the time:

> Portable devices (e.g., IPhone [*sic*] from Apple, Android from HTC, etc.) may include decoding software to be used to decode the scanned barcode symbology…. Furthermore, if the portable electronic device contains an image capture device (e.g., a camera) and character recognition software, the user may take a picture of

the object and the character recognition software may be used to decode the image
and/or name of the object.

'752 Patent at 2:67-3:11 (emphasis added).

When symbology has been detected according to the embodiments of the present
disclosure, the portable electronic devices are configured to send the symbology
information to the appropriate applications residing on the portable electronic
device. These applications are instructed to decode the symbology, if not already
decoded by other applications on the portable electronic device.… Some
applications that may be downloaded to portable electronic devices include
symbology scanning and/or decoding programs. [Providing examples of such
applications].

'752 Patent at 3:29-33. Indeed, the specification explains that symbology may be decoded "[u]sing

standard and existing computer processing power and software solutions." '752 Patent at 4:50-55.

The final three steps of claim 1, describe generic data transmission and display. As with the

previous steps, these final three steps are carried out using generic computer components such as

"a remote server" and a "display device." *See, e.g.*, '752 Patent at 6:67-7:6 (recognizing that the

"display devices" may be any "type of display currently existing or existing in the future"). These

limitations, both individually and as an ordered combination, cannot impart an inventive concept

to the claim. *See buySAFE, Inc.  v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a

computer receives and sends the information over a network—with no further specification—is

not even arguably inventive."); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed.

Cir. 2016) (holding that claims "[did] not state an arguably inventive concept" where the claims

involved displaying information "but did not include any requirement for performing [the display

function] by use of anything but entirely conventional, generic technology").

Turning to Symbology's Complaint, the Court finds no more than conclusory statements

related to *Alice* Step Two. Symbology's "specific and plausible statements of fact" are nothing of

the sort. They are threadbare, conclusory statements. The First Amended Complaint states that the

limitations, alone or in combination, are not well-understood, routine, or conventional because the

claims "include software and hardware that do not operate in a conventional manner." The First Amended Complaint goes no further. It does not explain how the software and hardware operate in an unconventional manner. In other words, Symbology alleges that the hardware and software are unconventional because the hardware and software are unconventional. This not a "specific and plausible statement[] of fact," and as explained above, it is contradicted by the patents themselves. While Symbology is correct that the conventionality of any element or combination of elements is ordinarily a question of fact that must be proven by clear and convincing evidence, it is also true that "the patent in suit [may] prove[] its own invalidity." *Univ. Of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 930 (Fed. Cir. 2004). Such is the case here. The patent itself shows that claimed limitations, alone and in combination, were well-understood, routine, and conventional to one of ordinary skill in the art.

The Court finds that the claims of the Asserted Patents are directed to the abstract idea of data recognition and retrieval. The claim limitations, alone and in combination, recite no more than generic computer operations and barcode scanner functions that were well-known, routine, and conventional at the time of the invention. Accordingly, the Asserted Patents do not claim eligible subject matter under § 101.

## IV.    CONCLUSION

For the foregoing reasons, Dexcom's Motion (Dkt. No. 25) should be and hereby is **GRANTED**. Accordingly, Symbology's First Amended Complaint is **DISMISSED WITH PREJUDICE**. All pending requests for relief in the above-captioned case not explicitly granted herein are **DENIED AS MOOT**. Dexcom shall further recover its costs as the prevailing party. The Clerk of the Court is directed to **CLOSE** the above-captioned case.

**So ORDERED and SIGNED this 25th day of July, 2024.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE